**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **AMY MURPHY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:14-cv-02489-RDP** |
| | } | |
| **JOHN MCHUGH, in his capacity as** | } | |
| **Secretary of the United States Department** | } | |
| **of the Army,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OPINION</u>**

**I.     Introduction**

This "mixed-case appeal" is before the court on Defendant's Motion to Dismiss Plaintiff's Second and Third Claims and for Affirmation of the MSPB's Decision (Doc. # 27), filed October 27, 2015.  (Doc. # 1 at ¶ 2).  The Motion is fully briefed.  (Docs. # 28, 35, 41).  Plaintiff has also filed an Initial Second Motion for Leave to Amend Complaint.  (Doc. # 32).  That Motion is also fully briefed.  (Docs. # 32, 36, 42).  After careful review, and for the following reasons, Defendant's Motion (Doc. # 27) is due to be granted in part and denied in part, and Plaintiff's Motion (Doc. # 32) is due to be denied.

**II.     Background Facts**

Plaintiff alleges she was discriminated against by her former employer, the Department of the Army ("the Army"), due to her mental health disability, bipolar disorder.  (Doc. # 1).  She began her civil service career with the Army in 1999 and avers that, at the time of her termination, she had "the equivalency of twenty-seven-and-one-half years of experience."  (*Id.* at

¶ 7).   After a series of promotions, Plaintiff attained a Budget Analyst position, which bore a federal civil service employment grade equivalency of GS-13 (NH03).   (*Id.*).   Effective October 10, 2010, Plaintiff transferred to a position with the Program Executive Office for Simulation, Training and Instrumentation ("PEO-STRI"), Business Management Division, Targets Management Office ("TMO"), as a Project Manager for Instrumentation, Targets and Threats Simulators at the Army's Redstone Arsenal ("Redstone") in Alabama.   (*Id.* at ¶ 8).   Plaintiff alleges that although her job title was Program Analyst, her duties were as a Budget Analyst. (*Id.*).   Her immediate supervisor at Redstone was Arnatta Poole, the Business Manager in the TMO, and her secondary supervisor was Bruce E. Truog, the Deputy Director of the TMO.   (*Id.* at ¶ 9).

The Program Analyst job is an "acquisition position," which means it requires a certification and secret security clearance.   (Doc. # 1 at ¶ 12; Doc. # 18 at ¶ 12).   When Plaintiff transferred, she executed a memorandum stating she would obtain Acquisition Certification within two years from the date of her Army component hire (that is, by October 10, 2012).   (Doc. # 1 at ¶ 12).   Plaintiff avers that "such certification did not specifically pertain to [her] job as a Budget Analyst."   (*Id.*).   Also, Plaintiff alleges she "possessed a secret security clearance" when she transferred.   (*Id.*).   She did not handle any classified materials during her time at Redstone. (*Id.*).

Plaintiff avers that "[the Army] knew, or should have known," starting August 3, 2006, that she received mental health treatment (including medication and therapy) for bipolar disorder, and that she had been receiving such treatment since October 2002.   (Doc. # 1 at ¶ 10). Plaintiff claims that this is so because the Office of Personnel Management Investigation Service had conducted a background investigation of her and information regarding her mental health

treatment was contained in the investigative file.  (*Id.*).  She further avers that in October 2011, she told Poole of her bipolar disorder during a discussion concerning Plaintiff's progress to attain a Level III Acquisition Certification.  (*Id.* at ¶ 11; Doc. # 18 at ¶ 11).  Plaintiff alleges that after she told Poole of her bipolar disorder, Poole's "decorum, method of supervision, and general attitude toward" her became detrimental to her work performance.  (Doc. # 1 at ¶ 13).

Plaintiff further asserts that her mental health stability deteriorated prior to October 2011. (Doc. # 1 at ¶ 14).  She submitted to Defendant a medical absence leave request dated January 26, 2012, from her psychiatrist Regina M. Doody, M.D.  (*Id.*).  Dr. Doody recommended that Plaintiff be placed on Family and Medical Leave Act ("FMLA") leave.  (*Id.*).  Plaintiff also submitted a February 2, 2012 Department of Labor FMLA Healthcare Provider Certification prepared by Dr. Doody, which stated that Plaintiff suffered from bipolar disorder and recommended her supervisor be changed.  (*Id.*; Doc. # 18 at ¶ 14).  Poole charged Plaintiff Absent Without Leave ("AWOL") for the period January 23–27, 2012, and implemented a Contribution Improvement Plan ("CIP").  (*Id.*).  Plaintiff contends the CIP was never formalized (Defendant disputes this assertion (Doc. # 18 at ¶ 14)), but Poole nevertheless subsequently utilized the CIP as a method of supervising Plaintiff's performance.  (Doc. # 1 at ¶ 14).

The Army and PEO-STRI have equal employment opportunity policies and procedures for qualified individuals with disabilities, including procedures concerning requests for reasonable accommodations.  (Doc. # 1 at ¶ 15; Doc. # 18 at ¶ 15).  Plaintiff alleges that "Poole and upper management" within the TMO failed to implement and follow those procedures after Plaintiff notified Poole that she suffered from a bipolar disorder "and inferred she needed employment accommodation."  (Doc. # 1 at ¶ 15).  She further avers that Poole failed to do the following: (1) advise her of the existence of the Standard Operating Procedure ("SOP") for

reasonable accommodations and Acquisition Certification assistance; (2) alert Poole's Supervisor, Truog; (3) notify Plaintiff of the availability of a Job Accommodation Network; (4) notify the Individual's with Disabilities Program Manager in Equal Employment of any requests; and (5) interact with Plaintiff or Dr. Doody.[1]  (*Id.*).

On April 6, 2012, the Army extended Plaintiff's time to obtain her Level III Acquisition Certification by six months, making her new deadline April 26, 2013.[2]  (Doc. # 1 at ¶ 16; Doc. # 18 at ¶ 16).  In February 2013, Plaintiff still lacked two necessary courses.  (Doc. # 1 at ¶ 17).  She failed to obtain a passing grade that would let her enroll in and take the final course of study.  (*Id.*).  Plaintiff avers she received no substantive assistance from Poole toward obtaining Acquisition Certification.  (*Id.*).  Instead, Plaintiff alleges that Poole required her to complete daily job requirements after classroom work, and she "lost valuable review time for testing."  (*Id.*).  She claims these "events and personal events caused [Plaintiff] to experience bipolar reactions."  (*Id.*).  Dr. Doody again completed a Department of Labor FMLA Healthcare Provider Certification on March 22, 2013, renewed the recommendation that Plaintiff be assigned a new supervisor, and stated Plaintiff would be unable to return to work prior to June 1, 2013.  (*Id.*; Doc. # 18 at ¶ 17).  Plaintiff avers she was on leave from late February 2013 until June 1, 2013.  (Doc. # 1 at ¶ 17).

On April 8, 2013, Alvin Brown, the Director of the TMO at PEO-STRI, informed Plaintiff that her secret security clearance was locally suspended and she was placed on administrative leave.  (Doc. # 1 at ¶ 18; Doc. # 18 at ¶ 18).  Plaintiff asserts that when she asked Brown for a reason, he "simply stated" that she would never work again as a Budget Analyst.

---

[1] Defendant denies that Plaintiff requested a reasonable accommodation and avers that its SOPs are available on the PEO-STRI intranet, and were available to Plaintiff throughout her career with the Army.  (Doc. # 18 at ¶ 15).

[2] Plaintiff alleges Defendant has a "common practice" of granting such extensions.  (Doc. # 1 at ¶ 16).

(Doc. # 1 at ¶ 18).   After her security clearance was suspended, Plaintiff could not access her work computer.  (*Id.* at ¶ 19; Doc. # 18 at ¶ 19).   She further avers she could not enter or leave her work site or access her work product, and this "prematurely foreclosed" her from completing Acquisition Certification.  (Doc. # 1 at ¶ 19).   Plaintiff alleges she requested that Poole grant her a waiver or extension of time to complete Acquisition Certification, but Poole denied that request.  (*Id.* at ¶ 20).

Plaintiff avers that in September 2013, without her knowledge, Poole sought permission to discipline her based upon purported performance deficiencies.  (Doc. # 1 at ¶ 21).  On October 18, 2013, the Department of Defense Consolidated Adjudication Facility ("CAF") notified Plaintiff by letter of its intent to revoke her security clearance.  (*Id.*; Doc. # 18 at ¶ 21).  Plaintiff submitted a response "with specific objections and denials."  (Doc. # 1 at ¶ 21).  She alleges that "[the Army] has not taken any further action regarding the security clearance" (although there is no dispute that her clearance was revoked).  (*Id.*).  Additionally, Poole sent Plaintiff an October 17, 2013 Notice of Proposal to Remove her from federal service for failure to satisfy a condition of employment.  (*Id.*; Doc. # 18 at ¶ 21).  Plaintiff, through counsel, responded to Truog, the deciding official, concerning the removal proposal, and cited "[i]nconsistencies" and her bipolar disorder.  (Doc. # 1 at ¶ 21).  On December 10, 2013, Truog rendered a decision that sustained the charges against Plaintiff, removed her from federal service, and specified reconsideration and appeal rights.  (*Id.*; Doc. # 18 at ¶ 21).  Defendant asserts that the PEO-STRI Security Office notified CAF of Plaintiff's removal from service.  (Doc. # 18 at ¶ 21).

Subsequently, Plaintiff filed a timely appeal with the United States Merit Systems Protection Board ("MSPB").  (Doc. # 1 at ¶ 22).  Through counsel, she filed discovery requests.  (*Id.*).  The Army responded by saying, in essence, all her discovery requests were irrelevant and

immaterial. (*Id.*). Plaintiff then filed a motion to compel responses to her discovery. (*Id.*). However, the Administrative Law Judge ("ALJ") presiding over Plaintiff's MSPB appeal did not address that motion until a telephonic pre-administrative trial conference in May 2014. (*Id.* at ¶ 23). The ALJ determined that the Army had to respond to only two discovery requests concerning reasonable accommodation. (*Id.*). The Army responded on June 30, 2014, and provided the SOP that established reasonable accommodation procedures. (*Id.*). The ALJ held a hearing on July 9, 2014. (*Id.*).

On October 29, 2014, the ALJ rendered an initial decision (Docket Number AT-0752-14-0358-I-1) affirming the Army's actions. (Doc. # 1 at ¶ 24). The ALJ found that Plaintiff was not a "qualified individual with a disability," and therefore the Army had no duty to provide her with reasonable accommodations. (*Id.*). Further, the ALJ determined that, because Plaintiff was not a "qualified individual with a disability" any alleged harmful procedural error in failing to follow the SOP regarding reasonable accommodation was moot. (*Id.*). And, the ALJ concluded that the removal of Plaintiff from federal service was reasonable. (*Id.*). The initial decision stated that it would become a final decision on December 3, 2014. (*Id.*).

### III.    Procedural History

Plaintiff timely filed her Complaint on December 30, 2014, alleging four claims: (1) disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791; (2) disability discrimination (based upon a failure to reassign her); (3) disability discrimination (claiming Defendant had a bad-faith interactive process); and (4) judicial review of the MSPB's final decision (which Plaintiff contends should be vacated). (Doc. # 1). Defendant answered and filed a partial motion to dismiss count one of the Complaint. (Docs. # 3, 5). After that motion was briefed, Plaintiff moved for leave to amend her Complaint. (Doc. # 14). On April 8, 2015, the

court dismissed Plaintiff's first claim for lack of subject matter jurisdiction under *Department of Navy v. Egan*, 484 U.S. 518 (1988) and *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003), because Count One was premised on the suspension of Plaintiff's security clearance. (Doc. # 15). The court also denied Plaintiff's motion for leave to amend as futile. (*Id.*).

Defendant subsequently filed an Amended Answer, which was thereafter followed by this motion to dismiss. (Docs. # 18, 27). The present motion seeks dismissal of Count Two of the Complaint under Federal Rule of Civil Procedure 12(b)(1), based upon a lack of subject matter jurisdiction (and essentially for the same reasons Count One was dismissed).[3] (Docs. # 27, 28). Defendant also argues that Plaintiff failed to satisfy certain administrative prerequisites. (*Id.*). Additionally, in the motion to dismiss, Defendant contends that without a viable predicate claim (*i.e.*, Count Two), and because Plaintiff did not satisfy the administrative prerequisites, Count Three should also be dismissed. (*Id.*). Further, Defendant's motion asserts that if these claims are dismissed, Plaintiff's fourth claim (*i.e.*, Count Four, seeking judicial review of the MSPB decision) is ripe for review, and the MSPB decision should be affirmed. (*Id.*). Defendant included an evidentiary submission with its motion. (*See* Doc. # 27). Plaintiff filed an opposition brief with additional evidentiary material, and contends that the court should review Defendant's motion under Federal Rule of Civil Procedure 56 and allow discovery to be completed. (Doc. # 35). Defendant filed a reply brief, arguing that the motion is a mixture of one under filed Rule 12(b)(1) and one seeking administrative review, and included a supplemental exhibit in support. (Docs. # 41, 46-1).

Plaintiff also filed a motion for leave to amend her Complaint pursuant to Rule 15(a)(2). (Doc. # 32). She asserts that leave should be granted because an amendment would add

---

[3] Defendant attributes the gap of time between the dismissal motions to a review "of a more complete administrative record." (Doc. # 27 at p. 2).

background information concerning "[p]rior adverse acts" including the suspension of her security clearance.  (*Id.* at p. 2).  Plaintiff further argues that amendment is not futile because Defendant's dismissal motion, despite being based under Rule 12(b)(1), "incorporates arguments and law applicable to Rule 12(b)(6)," and "is actually a Motion for Summary Judgment."  (*Id.* at pp. 2-3).  Thus, Plaintiff contends, she "is entitled to develop a record in opposition," and such a record cannot be fully developed without amending the Complaint and allowing discovery on it. (*Id.* at p. 3).  Plaintiff included with her motion to amend a proposed Second Amended Complaint.[4]  (Doc. # 33).  Defendant filed an opposition brief, asserting that it "would not have necessarily opposed a request by Plaintiff to file an amended complaint – had Plaintiff made one to Defendant," but that any amendment would nonetheless be futile and leave should be denied.[5] (Doc. # 36 at p. 1).  Plaintiff filed a reply brief, arguing among other things that amendment would not be futile because she shows plausible foundations to her claims, and *Egan* and its progeny do not clearly foreclose her claims.  (Doc. # 42).

## IV.    Plaintiff's Second and Third Claims Are Due To Be Dismissed

Among other things, Defendant's Motion requests dismissal of Counts Two and Three of Plaintiff's Complaint for lack of subject matter jurisdiction, because Plaintiff did not satisfy her administrative remedies, and because her third claim is not a stand-alone claim.  The court reviews each argument, in turn.

### A.    The Court Cannot Review Plaintiff's Second Claim Because It Concerns Security Clearance Decisions

Defendant contends the court lacks subject matter jurisdiction over Plaintiff's failure to reassign claim because it would involve an impermissible review of security clearance

---

[4] Despite this nomenclature, there is no amended complaint on this case's docket.  The court denied Plaintiff's first attempt to amend her Complaint due to futility.  (Doc. # 15).

[5] Defendant attached the final MSPB decision as an exhibit to its opposition brief.  (Doc. # 36-1).

determinations.  The court agrees.

### 1.     Standard of Review

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute."  *Id.* (citations omitted).  The Supreme Court "early in its history wisely adopted a presumption that every federal court is without jurisdiction unless the contrary affirmatively appears from the record."  *United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005), quoting *Del. v. Van Arsdall*, 475 U.S. 673, 692 (1986) and citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 10 (1799).

A motion under Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a defense of lack of subject matter jurisdiction.  A Rule 12(b)(1) motion to dismiss should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1232 (N.D. Ala. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  The burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction (*i.e.*, here, Plaintiff).  *Id.*  "A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction."  *Southeast Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla. 1993) (citing *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991); *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 671-72 (5th Cir. 1978)[6]); *see also Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004) (observing that a court may not proceed in the absence of subject matter jurisdiction).

---

[6] The Eleventh Circuit recognizes all of the Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, as binding precedent.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

A Rule 12(b)(1) motion may raise either a facial or factual attack.  *Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014) (citing *McElmurray v. Consol. Govt. of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).  "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 15125, 1528-29 (11th Cir. 1990)) (other citations omitted).  On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Id.*  In other words, when a party raises a factual attack to subject matter jurisdiction, the court is not obligated to take the allegations in the complaint as true, but may consider extrinsic evidence such as affidavits.  *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citations omitted).

Of course, the analysis of a factual attack does not simply end with a consideration of extrinsic evidence when a factual attack on subject matter jurisdiction also implicates an element of the cause of action.  *See Garcia*, 104 F.3d at 1261.  As the Eleventh Circuit has stated, if implicated:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . .  Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.  This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion . . . .  [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence

of a federal cause of action.  The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981)) (changes in original).  Stated otherwise, when a Rule 12(b)(1) motion attacks the merits of a cause of action, a district court should review those attacks under the standards of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Accordingly, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2.  Analysis

Defendant argues that the court lacks subject matter jurisdiction to review Plaintiff's failure to reassign claim because that claim necessarily involves review of actions related to her security clearance.  Defendant does not rely on the Complaint's language but instead challenges the court's jurisdiction in fact.  The factual issue raised is whether evaluation of Plaintiff's claims would require the court to assess matters relevant to her security clearance.[8]

The Supreme Court's decision in *Department of Navy v. Egan*, 484 U.S. 518 (1988) is the

---

[7] When a court assumes jurisdiction to address the merits of a complaint, and considers evidence extrinsic to the complaint, it generally should review the dismissal motion as a Rule 56 motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Pursuant to Rule 56(c), summary judgment is proper "if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this case, although the court considers materials extrinsic to the pleadings, for the reasons set forth in this opinion, the court may consider that evidence without converting Defendant's Motion to one for summary judgment.

[8] Because the underlying elements of Plaintiff's claims are not implicated by this challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999).

seminal case concerning quasi-judicial and judicial review of security clearance decisions.   In *Egan*, the Supreme Court held that the MSPB has no authority to review the substance of an underlying security clearance determination when reviewing an adverse employment action.  *See* 484 U.S. at 526-31.  This is because "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."  *Id.* at 527.  "The authority to protect [national security] information falls on the President as head of the Executive Branch and as Commander in Chief." *Id.*; *see also* U.S. Const., Art. II, § 2.  Further, the court observed, "[i]t should be obvious that no one has a 'right' to a security clearance.  The grant of a clearance requires an affirmative act of discretion on the part of the granting official."  *Egan*, 484 U.S. at 528.  That act of discretion "does not equate with passing judgment upon an individual's character.  Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information."  *Id.*  Stated otherwise, "the grant or denial of security clearances . . . [is] an inexact science at best."  *Id.* at 529 (quoting *Adams v. Laird*, 420 F.2d 230, 239 (D.C. Cir. 1969), *cert. denied*, 397 U.S. 1039 (1970)).  Thus, "[p]redictive judgment of this kind must be made by those with the necessary expertise in protecting classified information."  *Id.* Accordingly, the Court concluded that:

> the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.  Certainly, it is not reasonably possible for an outside nonexpert body [such as this court] to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence.  Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

*Id.*  The exception to that limitation of review comes only when "Congress *specifically* has provided otherwise."  *Id.* at 530 (emphasis added).

Since *Egan*, the courts, including the Eleventh Circuit, have expressly determined that the jurisdictional limitations set forth in *Egan* extend to judicial review of security clearance determinations. *See, e.g.*, *Hill v. White*, 321 F.2d 1334, 1336 (11th Cir. 2003) (p*er curiam*) ("The United States Supreme Court has made clear that a decision concerning the issuance or non-issuance of security clearance is a matter within the purview of the executive and not to be second-guessed by the judiciary unless Congress has specifically provided otherwise."); *accord Baisden v. Winter*, No. 04-cv-212, 2006 WL 717193, at *3 (S.D. Ga. Mar. 20, 2006) ("Because an employment discrimination claim would require a court to weigh the validity of the executive's proffered reasons for revoking a security clearance, courts have held that adverse employment actions based on denial of security clearance are not subject to judicial review.") (collecting cases). In *Hill*, the Eleventh Circuit also concluded that *Egan*'s holding was not limited to direct review of the denial of a security clearance, but likewise prevented judicial review of the initiation of a security clearance investigation. *Id.* at 1335-36 (determining such investigation of the "initial stages of a security clearance determination is to review the basis of the determination itself regardless of how the issue is characterized"); *see also Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997) ("the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference").

Here, Plaintiff claims that Defendant violated Section 501 of the Rehabilitation Act (28 U.S.C. § 791) by failing to reassign her "to fill the first available vacant Budget Analyst position, or another position in a similar capacity, at equal or lesser grades."   (Doc. # 1 at ¶ 34). Defendant contends that the court cannot review the merits of that claim without impermissibly looking into a determination regarding Plaintiff's security clearance.  (Doc. # 28).  It is clear that

Congress has not "specifically provided" in any of the provisions of Section 501 or 42 U.S.C. §

2000e-16 (which sets forth the remedies for violation of Section 501, *see* 29 U.S.C. § 794(a)(1))

"for either MSPB or judicial review of the Executive's security clearance decisions.  None of

these provisions 'by its terms . . . confer[s] broad authority' on courts to review security

clearance determinations."  *Guillot v. Garrett*, 970 F.2d 1320, 1325 (4th Cir. 1992) (quoting

*Egan*, 484 U.S. at 530).  Therefore, if Plaintiff's failure to reassign claim implicates a security

clearance decision, the court has no jurisdictional authority over that claim.

Defendant argues that its inability to reassign Plaintiff was due to her suspended security

clearance.  (Doc. # 28 at p. 10).  There is no dispute that Plaintiff had a security clearance when

she assumed the Program Analyst position.  (*See* Doc. # 1 at ¶ 12; Doc. # 26-3 at p. 2 (setting

forth requirement of obtaining and maintaining a security clearance required for Program

Analyst position)).  In her November 14, 2013 affidavit responding to Defendant's October 17,

2013 Notice of Proposed Removal, Plaintiff avers, as follows:

> Had my security clearance been in place I would not have been put on
> administrative leave and I would have had an opportunity, providing the
> opportunity was meaningful, to complete my certification requirements.  Even
> more important, had there not been a misrepresentation to suspend my security
> clearance the job search for me would have been potentially successful.  I wanted
> a reassignment. . . . Every job I have had either required or demanded a security
> clearance.

(Doc. # 27-4 at MURPHY_000713-14).  (*See also* Doc. # 27-1 at ¶ 5 ("At the time of Ms.

Murphy's removal from federal service, there was no position comparable to a Program Analyst,

NH-0343-III to transfer her to which did not require a security clearance.")).

After careful review, the court determines it has no jurisdiction to review the merits of

Defendant's decision not to reassign Plaintiff to a vacant position requiring a security clearance

once that clearance was suspended or revoked.  Plaintiff's failure to reassign claim arises under

Section 501 of the Rehabilitation Act, which implicates Defendant's SOP for reasonable accommodations.   The court is not addressing the merits of Plaintiff's claim; however, it is readily apparent that both the Rehabilitation Act and the SOP require for an individual requesting a reasonable accommodation, which includes reassignments, to be a "qualified individual."   (*See* Doc. # 35-3 at pp. 2, 7).   In cases such as this, the court is deprived of jurisdiction to assess whether Plaintiff was a "qualified individual" when qualifications include a security clearance. Plaintiff, however, argues that "reassignment would be applicable pre-April 8, 2013 when she was, without question, a qualified individual.   Arguably, during the removal process, reassignment could have involved simply lifting the security clearance suspension to complete a reassignment, or reassign in lieu of the suspension of Plaintiff's security clearance. . . ."   (Doc. # 25 at p. 17).   But that argument is fatally flawed for this reason:  it implicates security clearance matters and this court is forbidden from reviewing it.   *See Moody v. Gates*, No. 07-cv-410, 2008 WL 2038260 (N.D. Fla. May 12, 2008).

In *Moody*, the plaintiff was not challenging the revocation of her security clearance, but rather was challenging the Department of Defense's decision to designate her position as one requiring such a clearance.   2008 WL 2038260, at *5.   The court held that

> Only the Department of Defense is fully informed about why certain positions are sensitive and others are not.   Determining whether there was an improper motive behind the challenged action would require this court to examine the merits of the classification decision.   Such an inquiry by this court would infringe upon defendant's discretionary authority to withhold sensitive information from unauthorized persons by classifying those positions.   Because *Egan* held that such scrutiny is an impermissible intrusion by a nonexpert body into the authority of the Executive Branch over matters of national security, plaintiff's claim of discriminatory re-classification of her position's sensitivity designation is unreviewable.

*Id.* (citing *Skees v. Dept. of Navy*, 864 F.2d 1576, 1577-78 (Fed. Cir. 1989); *Mattingly v. Dept. of Navy*, 36 Fed. Appx. 428, 429 (Fed. Cir. 2002) (*per curiam*)).   Similarly, this court cannot

inquire into the motives behind the failure to reassign Plaintiff because doing so would infringe upon Defendant's discretionary authority to withhold sensitive information from Plaintiff by determining which positions are security sensitive and which are not.[9]

Moreover, in *Hill*, the Eleventh Circuit made clear that reviewing any aspects of security clearance determinations "is to review the basis of the determination itself *regardless of how the issue is characterized*." 31 F.3d at 1336 (emphasis added). "The *Hill* decision cannot be avoided." *Paschal v. McHugh*, No. 12-cv-2985, 2015 WL 3836965, at *23 (N.D. Ala. June 22, 2015). Contrary to Plaintiff's arguments, reviewing whether a reassignment could have been made -- that is, whether a reasonable accommodation could exist -- necessarily calls into question the suspension and revocation of Plaintiff's security clearance.

Plaintiff cannot establish any set of facts concerning reassignment that would *not* require the court to look into Defendant's security clearance decisions, a task that is plainly forbidden by

---

[9] To the extent Plaintiff contends that there were certain positions to which she could have been reassigned that were either not security sensitive, or that certain positions, despite having a security clearance requirement, do not actually involve the handling of classified materials (which happened with Plaintiff's Program Analyst position here), that argument is off the mark. The court cannot assess why certain positions have security clearance requirements and why others do not. And this court is not in a position to second guess whether and "why certain positions are sensitive and others are not. [Defendant's] authority to withhold national security information from unauthorized persons by classifying those positions is not subject to the scrutiny of" the court. *Skees*, 864 F.2d at 1578.

Plaintiff attempts to distinguish *Egan* on the grounds that it addressed only reviews of the *substance* of security clearance denials, and argues that the court can review the feasibility of transfer to a non-sensitive job. (Doc. # 35.) But that distinction is clearly off target. Even examining the events surrounding Plaintiff's transfer would necessarily involve an examination of the security clearance qualification of certain positions, including the Budget Analyst position that Plaintiff once held, and to which she wishes to return. Stated otherwise, the court cannot determine whether a non-sensitive job exists without reviewing the security sensitivity of that and other positions. Furthermore, and to be sure, Defendant undertook a search for a vacant position that did not require a security clearance on behalf of Plaintiff, but none were available. (Doc. # 27-14 at p. 256:9-18; Doc. # 27-5 at p. 2). Also, the court notes that Defendant's SOP concerning reasonable accommodations provides that "Reassignments to a *funded vacant position* are considered a form of reasonable accommodation that must be provided, absent undue hardship, to a qualified employee. . . ." (Doc. # 35-3 at p. 7) (emphasis added).

*Egan* and its progeny.   Therefore, Plaintiff's second claim is unreviewable and due to be dismissed.[10]

## B.   Plaintiff Failed To Exhaust EEO Administrative Remedies

Defendant also contends that Plaintiff failed to exhaust the requisite Equal Employment Opportunity ("EEO") administrative remedies regarding her failure to reassign claim (with the exception of her claim for termination).   In particular, Defendant contends that any claim based upon a failure to reassign Plaintiff prior to the suspension of her security clearance is barred. (Doc. # 28).   Plaintiff concedes that her Complaint "failed to acknowledge exhaustion of administrative remedies," but argues the exhaustion requirements were nevertheless satisfied.[11] After careful review, the court determines Plaintiff has not satisfied her EEO administrative burden.

### 1.   The Applicable Standard of Review

A plaintiff's alleged failure to comply with EEO administrative prerequisites does not raise a jurisdictional question.   *See Ramirez v. Secy., United States Dept. of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012).   Rather, the forty-five day requirement functions as a statute of limitations, and may be subject to waiver, estoppel, and equitable tolling.   *Id.* (citation omitted). Thus, a failure to satisfy EEO prerequisites are typically best resolved as part of a Rule 12(b)(6) motion to dismiss rather than a Rule 12(b)(1) motion.   Because Defendant moved pursuant to Rule 12(b)(1), and the pleadings are closed, the court construes its motion on these matters as one under Rule 12(c) for a judgment on the pleadings.   "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to

---

[10] Plaintiff's request for jurisdictional discovery is without merit.   Discovery for jurisdictional purposes in this matter clearly would involve a review of security clearance determinations.

[11] Plaintiff also attempts to cure that failure by moving for leave to amend the Complaint to, in part, address exhaustion.   (*See* Docs. # 32, 33).

judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citations omitted); *see Bank of New York Mellon v. Estrada*, No. 12-cv-5952, 2013 WL 3811999, at *1 (N.D. Ill. July 22, 2013) ("A Rule 12(c) motion for judgment on the pleadings is 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" (citations omitted)).  The court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party.  *Cannon*, 250 F.3d at 1301.

A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss.  *Pipes v. City of Falkville, Ala.*, No. 12-cv-2885, 2013 WL 3367105, at *1 (N.D. Ala. July 5, 2013) (adopting report and recommendation); *see also Losey v. Warden*, 521 Fed. Appx. 717, 719 (11th Cir. 2013) ("A motion to dismiss and a motion for judgment on the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citations omitted)).  Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted); *see also Losey*, 521 Fed. Appx. at 719 (applying plausibility standard articulated in *Iqbal* to Rule 12(c) motion).

A complaint states a plausible claim for relief "when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although detailed facts are not needed, a plaintiff is obligated to provide as grounds for entitlement to relief more than mere labels and conclusions.  *Id.*  Formulaic recitations of the elements of a cause of action do not satisfy a

plaintiff's burden.  *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

### 2.    Analysis

"[A]n aggrieved federal employee who seeks to pursue Rehabilitation Act claims in federal court must begin the administrative process with her employing agency."  *Holland v. Dept. of Health & Human Servs.*, 51 F. Supp. 3d 1357, 1374-75 (N.D. Ga. 2014) (citing *Gaillard v. Shinseki*, 349 Fed. Appx. 391, 392 (11th Cir. 2009) (*per curiam*) ("A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII of the Civil Rights Act of 1964 ....")).  That is, such an employee must first consult with an officer in her employing agency's EEO office within forty-five days of the alleged discriminatory event.  29 C.F.R. § 1614.105(a)(1); *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008).  Generally, a failure to timely initiate contact results in the claim being barred for failure to exhaust administrative remedies.  *See Shiver*, 549 F.3d at 1344; *Brown v. Snow*, 440 F.3d 1259, 1264-65 (11th Cir. 2006).

The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing

those acts are themselves timely filed." *Id.* A denial of transfer—that is, a failure to reassign—is a discrete act. *See id.* at 114.

Here, Plaintiff's Complaint asserts that there were two separate instances that give rise to a failure to transfer claim: in February 2012, and in February 2013. The former instance arises under Dr. Doody's February 2, 2012 certification that Plaintiff suffered from bipolar disorder and recommendation that her supervisor be changed.[12] (Doc. # 1 at ¶ 14). The latter instance (similarly) arose when Dr. Doody reiterated that recommendation. (*Id.* at ¶ 17). Although Plaintiff did not include any EEOC documentation with her Complaint, the court may consider that which exists and is presented by the parties without converting Defendant's Motion to one for summary judgment. *See Tillery v. Dept. of Homeland Sec.*, 402 Fed. Appx. 421, 425-26 (11th Cir. 2010) (*per curiam*) (holding that a court may consider evidence outside the pleadings or make fact findings concerning exhaustion of administrative remedies); *Holland*, 51 F. Supp. 2d at 1374 (stating that the court may consider documents central to Rehabilitation Act claims when resolving an exhaustion challenge, and citing cases); *cf. also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999) ("The prohibition against going outside of the facts alleged in the complaint protects against a party being caught by surprise when documents outside the pleadings are presented at that early stage. However in the instant case, [a securities fraud cause], Plaintiffs were well are of the [agency] filings."). It is well established that a court may consider EEOC documents without converting a Rule 12 motion to dismiss into a motion for summary judgment. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010); *Cobb v. Marshall*, 481 F.Supp.2d 1248, 1254 n. 2 (M.D.Ala. 2007). As the EEOC documents are central to Plaintiff's claim and are not subject to a dispute over authenticity, the court takes judicial

---

[12] It is not precisely clear whether the February 2, 2012 recommendation is Plaintiff's basis for her second claim, but the facts as pleaded suggest that.

notice of the documents and considers them in ruling on Defendant's motion.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (noting that when considering a motion to dismiss, a court may take judicial notice of the contents of relevant public records).

As part of her submission, Plaintiff provided (with her opposition brief) a March 1, 2012 EEOC Charge and an April 25, 2013 EEOC Information Inquiry Summary.  (Docs. # 35-7, 35-9).  The March 1, 2012 Charge sets forth four matters giving rise to the complaint in that Charge:

> a. Was [Plaintiff] discriminated against based on her mental disability (Bi-Polar Disorder) on January 30, 2012 when her supervisor, Arnatta Poole, Business Manager of the Task Management Office charged her with AWOL from 23 to 27 January 2012?
>
> b. Was [Plaintiff] discriminated against based on her mental disability (Bi-Polar Disorder) when she was put on a Contribution Improvement Plan by [Poole] on or about 9 March 2012?
>
> c. Was [Plaintiff] discriminated against based on her mental disability (Bi-Polar Disorder) when in August 2011 to present her request for Defense Acquisition Training for Level II and Level III certification, (necessary for her employment) was disapproved by [Poole], and she was told she could take these courses at Redstone Arsenal, but the training is not available to her?
>
> d. Was [Plaintiff] discriminated against based on her mental disability (Bi-Polar Disorder) when from June 2011 to present [Poole] holds her accountable for the Customer Earned Account funding process when these duties have never been officially transferred from her co-worker to her?

(Doc. # 35-7 at p. 1).  That EEOC Charge does not mention or refer to any failure to transfer or reassign Plaintiff.  Although she initially contacted her EEO Office (and, according to the March 2012 EEOC Charge, underwent an unsuccessful mediation), Plaintiff's contact with the EEOC Office did not include any complaints regarding the discrete act of failure to reassign. Accordingly, Plaintiff's failure to reassign claim, based on a February 2012 request, is not viable because she failed to satisfy the administrative prerequisites.[13]

---

[13] To be sure, the "time period for filing a[n EEOC] charge is subject to equitable doctrines such as tolling or estoppel," although those doctrines "are to be applied sparingly."  *See Natl. R.R.*, 536 U.S. at 114 (citations

Similarly, the April 2013 EEOC Information Inquiry Summary does not discuss any failure to reassign. (Doc. # 35-9).  Instead, it states that the EEO Officer "explained [to Plaintiff] the limitations EEO has with security clearances." (*Id.*).  It also reports that the EEO Officer informed Plaintiff that she was still on administrative leave with pay and no final decision regarding her clearance and employment had been made, so "she could wait to find out what the final decision and employment effects are and then file an EEO claim at that time" if needed. (*Id.*).  Based on this, Plaintiff argues she "chose not to enter the EEO process at that time" and "relied upon the advice of the EEO Officer in making said decision." (Doc. # 25 at p. 10).  But that argument misses the mark.  Plaintiff did not mention to the EEO Officer any failure to reassign claim, and by April 2013 she had already participated in the EEOC process.  The court has no hesitation in concluding that Plaintiff reasonably should have been aware of the EEO requirements by that time.  Plaintiff never filed an EEO charge concerning a failure to accommodate.

Moreover, and in any event, a 2013 failure to reassign claim is foreclosed because it necessarily would involve a review of a security clearance determination.  As discussed above,

---

omitted).  Plaintiff's argument that Defendant waived the exhaustion argument by not raising it during the MSPB proceedings misses the mark.  Timeliness of exhaustion may be waived only when the EEOC or another administrative body affirmatively determines that a charge is timely filed and the governmental agency fails to challenge that finding.  *See Fortson v. Carlson*, 618 Fed. Appx. 601, 605 (11th Cir. 2015) (*per curiam*) (citing *Ramirez*, 686 F.3d at 1250-53).  Defendant has not admitted nor was there any specific finding of timeliness of exhaustion prior to February 2013.  Similarly, neither estoppel nor tolling principles apply here.  Plaintiff's arguments that her claims should be tolled because she was unaware of time limits to file discrete acts and that she detrimentally relied upon Defendant's EEO Officer in February 2013 are misplaced.  Based on those arguments, it is clear that the EEO Office in February 2013 appropriately advised her of its limitations with respect to the suspension of her security clearance.  Moreover, and again, by that time, an inquiry into reassignment impermissibly would involve reviewing security clearance determinations.  Further, and in any event, Plaintiff previously participated in the EEO process in 2012, and was still participating in that prior EEO process in 2013.  Her claim that she did not know or understand the rules and regulations concerning the EEO process is meritless.  Finally, even if the deadline to file a charge with the EEOC begins to accrue on the date an accommodation request is denied, Plaintiff did not make a charge concerning a failure to reassign in 2012 or 2013.

the court cannot review those decisions.   Accordingly, Plaintiff's second claim is due to be dismissed.[14]

### C.      Count Three of Plaintiff's Complaint Is Due To Be Dismissed

Defendant argues that Plaintiff's third claim contained in Count Three does not state a claim for two reasons.  First, the "claim" alleges a bad-faith interactive process, but there is no independent cause of action for such a claim.  Second, the "claim" is actually part and parcel of a failure to provide reasonable accommodation claim (which is not a viable claim). (Doc. # 28). The court agrees with both assertions.

The court has already determined that Plaintiff's disability discrimination and failure to reassign claims (that is, Counts One and Two) call for an impermissible review of security clearance determinations.  Additionally, the Eleventh Circuit has "rejected the argument that an 'employer can be held liable merely for failing to engage in the [interactive] process itself (regardless of whether a 'reasonable accommodation' could in reality have been made for the employee.'"  *Spears v. Creel*, 607 Fed. Appx. 943, 950 (11th Cir. 2015) (*per curiam*) (quoting *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)); *see also Willis*, 108 F.3d at 285 (determining that "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant").[15]   Here, Plaintiff's bad-faith interactive process claim "merely reclothes" her disability discrimination claim (which the court has already rejected under *Egan* and its progeny) "and it fares no better in

---

[14] Plaintiff argues that there may be a substantial factual basis for her reassignment claim.  (*See* Doc. # 35).  But that argument puts the cart before the horse.  Simply put, the court concludes that (1) it does not have jurisdiction over that claim due to its relation to security clearance determinations, and (2) Plaintiff has failed to exhaust administrative prerequisites.  Therefore, the court is not passing any judgment on any merits to Plaintiff's claim.

[15] *Spears* and *Willis* addressed claims under the Americans with Disabilities Act ("ADA").  But the "standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]. . . .; thus, cases involving the ADA are precedent for those involving the Rehabilitation Act."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

this garb." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001).  Thus, for the reasons stated above, Plaintiff's third claim is foreclosed and due to be dismissed.[16]

## V.      Plaintiff Is Not Entitled to Leave to Amend Her Complaint

Plaintiff has moved for leave to amend her Complaint.   (Doc. # 32).   Rather than addressing the good cause standard provided for by Rule 16(b), she focuses on the liberal amendment standard set out in Rule 15(a).   Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).   Rule 16(b) provides, however, that once a scheduling order has been entered in a case, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

Almost sixteen months ago, on April 20, 2015, the court entered a Scheduling Order. (Doc. # 17).   That Order gave the parties a deadline of August 15, 2015, to amend their pleadings.   (*Id.*). Subsequently, on September 1, 2015, the court entered a Modified Scheduling Order.   (Doc. # 24).   That Order did not include a deadline for the parties to file any amended

---

[16] Moreover, utilizing the Rule 12(c) standard stated above for any potential bad-faith interactive process claim arising prior to the institution of the MSPB proceedings, the court determines that Plaintiff failed to timely exhaust her administrative remedies regarding any standalone failures to accommodate.   The court has already addressed a failure to reassign claim above.   Further, in her Complaint, Plaintiff included a series of averments concerning Defendant's failures to accommodate or interact with her, but does not point to any specific timeframe. (*See* Doc. # 1 at ¶ 15).  Based on the allegations bookending that list, the court presumes those purported failures occurred sometime between February and October 2012—well before Plaintiff filed her MSPB Complaint. (*See id.* at ¶¶ 14, 16).  "[B]efore an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA [or Rehabilitation Act], the employee must make an adequate request, thereby putting the employer on notice."  *Williamson v. Clarke Cty. Dept. of Human Res.*, 834 F. Supp. 2d 1310, 1320 (S.D. Ala 2011) (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). Plaintiff does not plead any specific requests for accommodation other than being assigned a new supervisor, and a request to be placed on FMLA leave (that was denied).   The court has already addressed the former request. Although Plaintiff set forth a claim in her March 2012 EEOC Charge concerning discrimination against her based on her being charged as AWOL in January 2012 (*see* Doc. # 37-7), Plaintiff did not timely bring suit for that claim. And, Plaintiff has not alleged a claim for violation of the FMLA.   Additionally, to be sure, Defendant extended Plaintiff's time to obtain Acquisition Certification by six months (in addition to seeking vacant positions that did not require a security clearance).   (Doc. # 1 at ¶ 16; *see also* Doc. # 27-2 at ¶ 5).  Plaintiff has presented no viable claims for reasonable accommodation; therefore, she cannot allege a claim for bad-faith interactive process.

pleadings.[17]  (*See id.*).  Plaintiff's Initial Second Motion for Leave to Amend Complaint was filed November 13, 2015.  (Doc. # 32).  Therefore, because Plaintiff's Motion "was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before [the court] will consider whether [her proposed] amendment is proper under Rule 15(a)."  *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (citations omitted); *see also Mann v. Taser Intl., Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009) (ruling that when a request to amend "comes long after the deadlines for filing motions to amend established in the scheduling order[] entered in this case," the plaintiff is "required to show good cause under Federal Rule of Civil Procedure 16(b)"); *Dozier v. Rowan Drilling Co., Inc.*, 397 F. Supp. 2d 837, 855 (S.D. Tex. 2005) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  (Quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003))).

Of course, it goes without saying that if the court considered only Rule 15(a), without regard to Rule 16(b)'s requirements in ruling on a motion to amend the pleadings, it "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  *Sosa*, 133 F.3d at 1419.  "[D]iligence is the touchstone of the Rule 16(b)(4) 'good cause' analysis."  *Rogers v. Hartford Life & Accident Ins. Co.*, No. 12-cv-19, 2012 WL 2395194, at *2 (S.D. Ala. June 22, 2012); *see also Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent.").

---

[17] The court notes that Plaintiff requested the Modified Scheduling Order and sent a proposed order.  (*See* Docs. # 21, 22).  Plaintiff did not include any proposed deadline for amending the pleadings.  (*See id.*).

In her Motion, Plaintiff contends she should be allowed to amend her Complaint because "the mere fact [her] security clearance was suspended is admissible as background information." (Doc. # 32 at ¶ 2). She further argues that Defendant's motion to dismiss (Doc. # 27), which the court addressed above, "incorporates arguments and law applicable to Rule 12(b)(6)," requiring the court to "apply differing review standards to facts," and in any event the Motion is actually one for summary judgment. (*Id.* at ¶¶ 3-4). Thus, Plaintiff asserts she "is entitled to develop a record in opposition to all facets" of Defendant's motion, but that "record cannot be fully developed without amending the Complaint and [conducting the] discovery predicated thereon." (*Id.* at ¶ 6). In summary, it appears Plaintiff's purpose for the proposed amendment is to include background facts on her security clearance suspension so that the parties can perform discovery concerning those facts. Apparently, she believes that in doing so she can defeat Defendant's motion (which, despite being filed under Rule 12(b)(1), she contends is actually a Rule 56 summary judgment motion). (Doc. # 32).

Plaintiff's arguments do not constitute good cause under Rule 16(b).[18] The court does not understand, and Plaintiff has not explained, why the additional factual allegations she contends are needed were not readily apparent (and available to her) at the time she filed her original Complaint. Plaintiff has not clearly shown that, despite her diligence, she could not meet the August 15, 2015 pleadings deadline. There is no argument (nor could there be) that the facts underlying the amended allegations were not available to Plaintiff prior to the Scheduling Order deadline or even prior to the filing of Defendant's Motion. Further, Defendant already had successfully moved to dismiss one of Plaintiff's claims on the basis that it impermissibly would involve the court's examination of security clearance matters. (*See* Doc. # 15). Plaintiff was

---

[18] It is immaterial that "Defendant says, had a request been made, it would have not opposed the Motion." (Doc. # 42 at p. 1 (referencing Doc. # 36)). Plaintiff has not received Defendant's consent and the court is not here granting her request.

then on notice (to the extent she was not already aware) that *Egan*'s shield against a court's prying into security clearance matters precluded her claims that were intertwined with those decisions and the considerations that undergird them.  Although Plaintiff and her counsel may disagree with this interpretation, or even have misunderstood the scope of *Egan* and its progeny, any such disagreement or misunderstanding does not satisfy the diligence requirements of Rule 16(b).  *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) ("the fact that Oravec or his counsel misunderstood the scope of legal protection available for PGS works does not constitute good cause").  Plaintiff could have -- indeed, should have -- moved to amend her pleadings within the timeframe allotted in the Scheduling Order, but she failed to do so.  After careful review, the court concludes that Plaintiff's attempt to amend her Complaint outside that timeframe is not supported by good cause.  *See, e.g.*, *Rogers*, 2012 WL 2395194, at *1 (good cause lacking when plaintiff moved two weeks after scheduling order deadline for leave to amend complaint); *see also Postell v. Greene Cty. Hosp. Auth.*, No. 05-cv-73, 2006 WL 2583686, at *2 (M.D. Ga. Sept. 7, 2006) (collecting cases). *Cf. also Stephens v. Ga. Dept. of Transp.*, 134 Fed. Appx. 320, 322 (11th Cir. 2005) (*per curiam*) (plaintiff's offered reason for delay in moving to amend was her discovery of a new legal theory through additional research was insufficient to show good cause).

But this is not a case that turns solely on the application of Rule 16(b).  Plaintiff also cannot show that leave to amend is warranted under Rule 15 because amendment would be futile.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citation omitted).  Again, Plaintiffs second and third claims are due to be dismissed because they would require an impermissible review of the suspension and removal of Plaintiff's security clearance.  Likewise, her proposed allegations addressing exhaustion of EEOC remedies are futile for these same

reasons. Background information is not needed on these claims because Plaintiff cannot prosecute them and is not entitled to discovery on them.[19]  For all these reasons, Plaintiff's motion to amend is due to be denied.

## VI.    The MSPB Record Is Not Before the Court and Cannot Be Reviewed

Defendant argues that the MSPB's decision is ripe for review if the court determines it has no jurisdiction over Plaintiff's other causes of action.  The court agrees that this matter would be ripe for judicial review *if* it had the MSPB record.[20]  But the administrative record is not before the court.[21]  Therefore, the court will defer ruling on any review of the MSPB decision until it receives the administrative record.

## VII.    Conclusion

For all these reasons, the court concludes that Defendant's Motion is due to be granted in part and denied in part, and Plaintiff's Motion is due to be denied.  The court will enter a separate order.

**DONE** and **ORDERED** this August 12, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[19] Further, additional background information is not necessary to undertake review of the MSPB decision since that review relies solely on the MSPB administrative record.

[20] Plaintiff contends that Defendant's motion is, in substance, one for summary judgment, "and as advanced for this specific issue of affirmation, this is a matter for summary judgment."  (Doc. # 35 at p. 24).  And, because she "has not received any meaningful discovery" on the matter of the MSPB decision, any ruling would be premature. (*Id.* at pp. 24-25).  Plaintiff's argument is misplaced.  Judicial review of the MSPB's decision is limited to a review of the administrative record because it is an appeal from an administrative agency.  *See Kelliher v. Veneman*, 313 F.3d 1270, 1274-75 (11th Cir. 2002) (collecting cases and citing to 5 U.S.C. § 7703) ("Courts that have addressed the issue uniformly apply the *de novo* standard of review only to the discrimination claims while other claims adjudicated before the MSPB are reviewed on the record.").

[21] Defendant stated in footnote 7 of its initial brief that "The MSPB will be submitting a complete, certified copy of the MSPB record directly to the Court within the briefing period of this Motion."  (Doc. # 28 at p. 17 n. 7). As of the date of entry of this opinion, the court has not yet received any MSPB record.  The court will in a separate order set a conference with the parties concerning obtaining the record from the MSPB and any further briefing schedule.